# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 10-CV-4008 (JFB) (WDW)

———————————

### JEFFREY LAX,

Plaintiff,

VERSUS

### 29 WOODMERE BOULEVARD OWNERS, INC., ET. AL.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
September 23, 2011

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Jeffrey Lax (hereinafter "plaintiff" or "Lax") brought this action against defendants 29 Woodmere Boulevard Owners, Inc. (the "Co-op"), Alexander Wolf & Company, Inc. ("Wolf"), Steven Mirsky ("Mirsky"), Erik J. Kinney, Jeanne Kinney, Lon Samuelson, Lisa Arian, Francine Rosen, Angela Dalmazio (collectively the "Woodmere defendants"), Sylvia Berkowitz, Martin Berkowitz, and Murray Berkowitz (collectively the "Berkowitz defendants"), alleging that they violated the Fair Housing Act, 42 U.S.C. § 3604, and various state laws.

The Woodmere defendants and Berkowitz defendants separately moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 16, 2011, following oral argument, plaintiff voluntarily dismissed all claims against the Berkowitz defendants

without prejudice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, thereby rendering the Berkowitz defendants' motion to dismiss moot. For the reasons discussed herein, the Court denies the Woodmere defendants' motion to dismiss.[1]

## I. BACKGROUND

### A. THE COMPLAINT

The following facts are taken from the amended complaint and are not findings of fact by the Court. They are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to the plaintiff, the non-moving party.

On April 30, 2010, plaintiff executed a contract with Martin and Sylvia Berkowitz

———————————

[1] Plaintiff has also moved for sanctions, but that motion is denied for the reasons set forth herein.

for the purchase of apartment 4J at 29 Woodmere Boulevard for a sum of $200,000, to be paid in cash. (Am. Compl. ¶¶ 5, 17.) All the negotiations had taken place between plaintiff and Murray Berkowitz, the son of Martin and Sylvia Berkowitz, who acted as his parents' agent. (*Id.* ¶¶ 16, 25.) Although the contract for the sale of apartment 4J was executed, the sale had to be approved by the Board of Directors of defendant Co-op because plaintiff was purchasing shares in a cooperative. (*Id.* ¶¶ 5-6.) Defendants Erik J. Kinney, Jeanne Kinney, Lon Samuelson, Lisa Arian, Francine Rosen and Angela Dalmazio were on the Board of Directors (hereinafter the "Board"). (*Id.* ¶¶ 9-14.) On or about May 13, 2010, plaintiff received from Wolf, the Co-op's managing agent, the application package that he had to complete and submit to the Board. (*Id.* ¶ 18.) Plaintiff submitted the completed application to the Board, meeting all of the requirements listed in the application package. (*Id.* ¶¶ 19-20.)

Mirsky contacted plaintiff to let him know that his application was denied without reason; plaintiff's request for reconsideration was similarly denied. (*Id.* ¶¶ 21-22.) Eventually, Murray Berkowitz indicated to plaintiff that he heard back from the Board and was told that the sale was rejected because the sale price for the apartment was too low. (*Id.* ¶ 25.) Murray Berkowitz insisted that, if plaintiff was willing to pay a higher price, he could convince the Board to approve the sale. (*Id.*) On or about July 23, 2010, plaintiff received an email from Murray Berkowitz that the Board was unwilling to sell to plaintiff regardless of how much he would be willing to offer for the apartment. (*Id.* ¶ 28.)

Murray Berkowitz was told by Wolf soon after July 23 that the Board rejected

plaintiff's application because of his single male status. (*Id.* ¶ 29.) Before plaintiff made an offer to Berkowitz for apartment 4J, the official sales price for the apartment was listed as $219,000. (*Id.* ¶ 30.) On or about July 24, 2011, after Murray Berkowitz learned that there was no chance that plaintiff's application would be reconsidered, the apartment was listed for $215,000. (*Id.*) Two open-houses were scheduled for August 17 and 29 with the apartment still listed at $215,000. (*Id.* ¶ 33.) However, on or about August 30, 2010, the apartment was listed for an asking price of $200,000. (*Id.* ¶ 37.)

Approximately one month prior, on or about June 25, 2010, plaintiff learned from a "current unit owner and resident of the 29 Woodmere Co-Op . . . who had direct knowledge of the Board of Directors' activities[,]" that the Board had a pattern of discriminatory conduct against "men who were single." (*Id.* ¶ 23.) This discriminatory conduct was a result of a bad experience with a previous male tenant who threw loud parties and smoked marijuana. (*Id.*)

Plaintiff contacted Wolf via email on August 6, 2010, alleging a discriminatory scheme against plaintiff. (*Id.* ¶ 31.) Murray Berkowitz stated to plaintiff in a phone conversation that took place several days later on August 10, 2010 that plaintiff was rejected by the Board for "discriminatory reasons." (*Id.* ¶ 36.) However, on August 28, 2010, plaintiff received a letter from counsel for Wolf, the Board, and Co-op that plaintiff was rejected solely based on the "negotiated purchase price" for the apartment. (*Id.* ¶ 34.) Counsel did not respond to plaintiff's questions about why the Board was unwilling to consider plaintiff when he made it clear that he would be amenable to paying a price above $200,000. (*Id.* ¶ 35.)

B. PROCEDURAL HISTORY

Plaintiff filed his complaint on September 1, 2010. At a pre-motion conference held on October 13, 2010, plaintiff indicated he wanted to amend his complaint. In an Order dated October 19, 2010 the Court set a deadline for plaintiff to file his amended complaint ("Am. Compl."), which was filed by plaintiff on October 20, 2011. On November 30, 2010, the Woodmere and Berkowitz defendants filed their motions to dismiss. Plaintiff filed his opposition to the Woodmere defendants' motion to dismiss on January 5, 2011. On January 20, 2011 the Woodmere defendants filed their reply. Then, on January 24, 2011, plaintiff filed his opposition to the Berkowitz defendants' motion to dismiss. The Berkowitz defendants filed their reply on February 3, 2011. Plaintiff filed his motion for sanctions on February 2, 2011. Oral argument was held on September 9, 2011. As noted above, on September 16, 2011, plaintiff voluntarily dismissed all claims against the Berkowitz defendants without prejudice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, thereby rendering the Berkowitz defendants' motion to dismiss moot. With respect to the remaining motion by the Woodmere defendants, the Court has fully considered the submissions and arguments of the parties.

II. MOTION TO DISMISS

A. STANDARD OF REVIEW

When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 129 S.Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth*." Id.* at 1950. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556–57).

The Court notes that, in adjudicating this motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not

attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom., Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of N.Y.*, No. 04 Civ. 1859, 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (stating court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

## B. DISCUSSION

The Fair Housing Act ("FHA") makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Likewise, property owners and their agents may not "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling." *Id.* § 3604(b).

The Woodmere defendants, including Wolf, Mirsky, the Co-op and Board, make a number of arguments in support of their motion to dismiss. First, they assert that a discrimination claim based on plaintiff's gender and marital status is not cognizable under the FHA.[2] (Defs.' Reply at 2-3.) Second, they argue that the amended complaint fails to allege that a similarly situated sub-class of single females was treated differently and fails to properly allege wrongful conduct by each of the defendants with sufficient particularity. (*Id.* at 3-6; Defs.' Mot. at 11-13.) Finally, the Woodmere defendants contend that Wolf and Mirsky cannot be held liable as agents for the Co-op, a "disclosed principal." (Defs.' Mot. at 13.)

As set forth below, the Court finds these arguments to be without merit and concludes that, accepting the allegations as true and drawing all reasonable inferences in plaintiff's favor, plaintiff has asserted a plausible "sex plus" housing discrimination claim against the Board and Co-op, as well as against Mirsky and Wolf, who can be held liable for discriminatory conduct in which they participated.[3]

---

[2]   The Court does not address the Woodmere defendants' arguments that plaintiff has not made out a claim for gender discrimination and discrimination based on marital status under the FHA. (Defs.' Mot. at 8-11.) It is apparent both in plaintiff's amended complaint as well as in his opposition papers that he is solely alleging "gender plus" discrimination based on his status as a single male. *See* discussion *infra.*

[3]   The Woodmere defendants analyze plaintiff's housing discrimination claim under the rubric of a civil conspiracy, citing to caselaw analyzing the standard plaintiff has to meet to set forth a *prima facie* case of civil conspiracy under New York law. (*See, e.g.,* Defs.' Mot. at 7.) This Court concludes, instead, that plaintiff's claim

### 1. "Sex Plus" Discrimination Claims are Cognizable under the FHA

Plaintiff has alleged "sex plus" or "gender plus" discrimination based on his status as a single male. Plaintiff asserts that the Woodmere defendants discriminated against him as a member of a specific subset of a protected class. Specifically, plaintiff alleges that because the FHA explicitly protects against discrimination based on gender, it also prohibits discrimination based on marital status in conjunction with gender. However, defendants contend that a discrimination claim based on plaintiff's gender and marital status is not cognizable under the FHA. As discussed below, the Court disagrees with defendants' contention and, instead, concludes that plaintiff can bring a claim based on his membership in a class of single males, who are a protected class under the FHA.

It is well settled that a discrimination claim can be based on membership in a class based on gender plus another characteristic, where gender is itself a protected category under the statutory rubric.[4] Sex plus

discrimination occurs when an individual is subjected to disparate treatment based on gender "considered in conjunction with a second characteristic." *Fisher v. Vassar College*, 70 F.3d 1420, 1433 (2d Cir. 1995). The Supreme Court recognized a "sex plus" protected class in *Phillips v. Martin Marietta Corporation*. Plaintiff alleged that she was discriminated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), based on her status as a woman with children in pre-school. 400 U.S. 542, 543 (1971). The Supreme Court concluded that "permitting one hiring policy for women and another for men—each having pre-school-age children" violated Title VII. *Id*. at 544. Other Supreme Court cases have similarly recognized discrimination based on gender in conjunction with another characteristic. *See, e.g., Newport News Shipbldg. & Dry Dock Co. v. EEOC*, 462 U.S. 669, 684 (1983) (allegations of discrimination based on gender and pregnancy); *Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 197-99 (1991) (alleged protected class based on gender and fertility); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989), *overruled in part on other grounds by* Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (alleged protected class based on gender and gender stereotypes).

Furthermore, "sex plus" discrimination claims are not solely limited to women and have been brought by men. *See, e.g.,*

---

must be analyzed under the FHA. Plaintiff does not allege a civil conspiracy claim under New York law in the amended complaint and it was confirmed at oral argument by plaintiff's counsel that no such claim is being asserted.

[4] To the extent the Woodmere defendants argue that this Court cannot rely on Title VII cases in its analysis under the Fair Housing Act, defendants are clearly incorrect. Courts, including the Second Circuit, have consistently relied on Title VII cases in their analysis of housing discrimination under the FHA. *See, e.g., Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003) ("When examining disparate impact claims under the [Fair Housing Act] and ADA, we use Title VII as a starting point."); *Braunstein v. Dwelling Managers, Inc.*, 476 F. Supp. 1323, 1326-27 (S.D.N.Y. 1979)

(where discrimination claims under the Fair Housing Act raised issues of "first impression in defining the limits of sex discrimination under § 3604," the court looked to cases "construing similar language in Title VII"); *Honce v. Vigil*, 1 F.3d 1085, 1088 (10th Cir. 1993) ("This circuit has not yet addressed the issue of sexual discrimination in the context of fair housing under Title VIII. However, we will look to employment discrimination cases [under Title VII] for guidance.").

*Hedges v. Town of Madison*, No. 3:09CV1468(PCD), 2010 U.S. Dist. LEXIS 30415, at *11 (D. Conn. Mar. 30, 2010) (plaintiff alleged he was a member of a protected class of "male plus family responsibilities in a family with health issues"); *Blitzer v. Potter*, No. 03 Civ. 6124 (DLC), 2005 WL 1107064, at *1, *10 (S.D.N.Y. May 6, 2005) (plaintiff alleged he was discriminated against based on his status as an "attractive male" and "unmarried man"); *Longariello v. Sch. Bd. of Monroe Cnty. of Fla.*, 987 F. Supp. 1440, 1449 (S.D. Fla. 1997) (plaintiff alleged discrimination based on his status as a single male).

More specifically, gender plus marital status, the very sub-class alleged by Lax, has been recognized as a protected category in numerous discrimination cases. *See, e.g., Bass v. Chemical Banking Corp.*, No. 94 Civ. 8833 (SHS), 1996 WL 374151, at *5 (S.D.N.Y. July 2, 1996); *Fisher v. Vassar College*, 852 F. Supp. 1193, 1225-26 (S.D.N.Y. 1994), *rev'd on other grounds* 70 F.3d 1420 (2d Cir. 1995); *Bryant v. Int'l Schs. Servs., Inc.*, 675 F.2d 562, 573 n.18 (3d Cir. 1982); *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1197-98 (7th Cir. 1971), *cert. denied*, 404 U.S. 991 (1971); *Longariello*, 987 F. Supp. at 1449 (collecting cases). Although none of these cases were in the context of the FHA, the Court finds that the Supreme Court and Second Circuit jurisprudence on "sex plus" claims under other discrimination statutes applies with equal force to the language of the FHA. In fact, in *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004), the Second Circuit held that "sex plus" or "gender plus" discrimination is actionable under Section 1983 and emphasized the viability of such claims under the full range of antidiscrimination statutes:

Discrimination that might be called "sex plus" in the Title VII context has, of course, been found to violate the Equal Protection Clause. *See, e.g., Weinberger v. Wisenfeld*, 420 U.S. 636 (1975) (holding that a statute that treats widowers less favorably than widows – which, in the Title VII context, might have been called a "sex plus marital status" claim – violates the Equal Protection Clause). Indeed, any meaningful regime of antidiscrimination law must encompass such claims.

365 F.3d at 119 n. 9.

In sum, this Court concludes that claims of "sex plus" discrimination based on the combination of gender and marital status are cognizable under the FHA. Accordingly, defendants' motion to dismiss on that ground is denied.

## 2. Plaintiff Has Sufficiently Pled a Plausible "Sex Plus" Claim under the FHA

Claims of housing discrimination under the FHA are evaluated under the three-part burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). Under *McDonnell Douglas*, the plaintiff bears the initial burden to establish a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of housing discrimination under the FHA, plaintiff must show that: (1) he was a member of a protected class; (2) he sought and was qualified to purchase the home; (3) he was rejected; and (4) the home remained available to other purchasers after he was rejected. *See Mitchell*, 350 F.3d at 47. Defendants make various arguments under

that rubric in support of their motion to dismiss—including (1) that plaintiff has failed to sufficiently plead a *prima facie* case of discrimination because there are no facts in the amended complaint corroborating an unnamed resident's assertion that the Board had a policy of rejecting single male applicants, and there is no evidence in the amended complaint of similarly situated single females who were treated more favorably; and (2) the defendants had a legitimate non-discriminatory reason in rejecting the plaintiff purchaser's application. (Defs.' Mot. at 10; Defs.' Reply at 3-6.) However, as discussed below, the *McDonnell Douglas* burden-shifting analysis is not applied at the motion to dismiss stage. Therefore, to the extent that defendants suggest that plaintiff must allege sufficient evidence in the complaint to satisfy a *prima facie* case for housing discrimination in order to survive a motion to dismiss, this Court disagrees.

With respect to pleadings in discrimination cases, the Supreme Court in *Swierkiewicz* rejected the concept that there is a heightened pleading standard and, thus, held that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a *prima facie* case under *McDonnell Douglas*. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *see also Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 71-72 (2d Cir. 2006) (applying *Swierkiewicz* holding to retaliation claims); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* holding to discrimination claims under Title VII and ADEA claims). The Second Circuit has made clear that *Swierkiewicz* also applies to Fair Housing Act claims. *Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008)

(applying *Swierkiewicz* to FHA claims). In *Boykin*, the Second Circuit stated:

> Like the Title VII and ADEA employment discrimination claims in *Swierkiewicz*, FHA disparate treatment claims like Boykin's are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). We have stated that "[t]he *Swierkiewicz* holding applies with equal force to any claim . . . that the *McDonnell Douglas* framework covers." *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam); *see also Lindsay v. Yates*, 498 F.3d 434, 439-40 (6th Cir. 2007) (applying *Swierkiewicz* to an FHA complaint); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062 (9th Cir. 2004) (same). Boykin's complaint need only satisfy Rule 8(a)'s standard of a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

*Id.*; *see also Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007) ("The question on appeal is whether, at the pleading stage, a housing-discrimination plaintiff must establish each of the elements of the prima facie case to survive a motion to dismiss the complaint. As described above, the district court held that the Lindsays' complaint failed to state a claim because they did not plead facts showing that the Eckert Road property remained available to other potential buyers, and that therefore the Lindsays did not satisfy the fourth element of the prima facie case. Both the district court and the parties failed to consider controlling Supreme Court authority that contravenes the district court's judgment.").

The Supreme Court has reiterated that "courts should generally not depart from the usual practice under the Federal Rules [of Civil Procedure]," and explained that heightened pleading requirements can only be established through the legislative process. *Jones v. Bock*, 549 U.S. 199, 212-13 (2007). No such heightened pleading requirement for discrimination claims exists in the Fair Housing Act. Therefore, the controlling standard for survival of a motion to dismiss lies not in *McDonnell Douglas*, but in Rule 8(a) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz*, 534 U.S. at 513 (complaints in discrimination cases "must satisfy only the simple requirements of Rule 8(a)").

The Second Circuit has emphasized that the Federal Rules "set forth a pleading standard under which a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz*, 445 F.3d at 591. Such a pleading "will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). A clear statement from the plaintiff alleging discrimination by the defendant is sufficient to achieve these goals. *See Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961) (holding that a complaint stating "that defendants have in a willful and malicious manner discriminated against plaintiff" provided sufficient notice of the discrimination claim); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("[Plaintiff's] complaint identifies the type of [housing] discrimination that she thinks occurs (racial), by whom (Citibank, through Skertich, the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan). This is all that she needed to put in the complaint."); *see also Flores v. New York City Human Resources Admin.*, No. 10 Civ. 02407 (RJH), 2011 WL 3611340, at *7 (S.D.N.Y. Aug. 16, 2011) ("Though not required to plead the elements of a prima facie case, the complaint must still nudge[] [plaintiff's] claims across the line from conceivable to plausible to survive a motion to dismiss." (internal quotation marks omitted)). As set forth below, in the instant case, plaintiff has pled sufficient allegations to support a plausible FHA discrimination claim under the above-referenced standard.

First, plaintiff clearly alleges in the amended complaint that he was discriminated against based on his gender in combination with his marital status. (*See, e.g.*, Am. Compl. ¶ 23 (alleging that the Board implemented a "policy that systematically denied the application for purchase . . . to any individual who was single and male, believing that single men were more likely to use drugs and throw loud parties"); ¶ 24 ("[T]he Corporation and its Board of Directors had determined that it need not interview anyone who was single and male, as such an individual was more likely to use drugs and throw parties . . . ."); ¶ 29 ("Mr. Lax was not an acceptable purchaser/resident because he was single and male."); ¶ 30 (alleging that he was rejected not because of the "low price" he was willing to pay but rather because of "a discriminatory purpose based on Mr. Lax being single and male"); ¶ 37 ("Mr. Lax was discriminated against by being declined because he was single and male, the 'type' of person . . . who was more likely to have loud parties and use drugs . . . ."); ¶ 39 (alleging discrimination because plaintiff "was single and male").)

In support of the claim, plaintiff alleged detailed facts to support his assertion that he sought and was qualified to purchase the apartment, but was rejected. As an initial matter, he alleges that he executed an agreement with the Berkowitz defendants for the purchase of the apartment. (*Id*. ¶ 17.) Further, according to the amended complaint, as part of his application package to the Co-op for Board approval, plaintiff was required to provide three letters each of both personal recommendation and business references, a letter from his employer, his salary, a copy of his last three paystubs, a letter of reference from his current landlord or managing agent, a copy of his income tax returns for the last two years with all schedules and W-2 forms attached, account verification from each financial institution in which plaintiff held assets, and a statement of plaintiff's prospective assets as compared to liabilities for the next year. (*Id*. ¶ 18.) Plaintiff alleges that he complied with all of these requirements. (*Id*. ¶ 19.) Plaintiff also alleges that he included a credit score, which indicated he had "[e]xcellent" credit. (*Id*. ¶ 20.h.)

Moreover, plaintiff has alleged other facts in connection with the rejection of his application to support his discrimination claim. As an initial matter, the apartment allegedly was placed back on the market after the Board rejected plaintiff's application so that it remained available to others for purchase. (*See, e.g.*, *Id*. ¶¶ 33, 36.) According to the amended complaint, on August 18, 2010, plaintiff received an email from counsel of the Woodmere defendants confirming that his application was rejected "based solely on the negotiated purchase price." (*Id*. ¶ 34.) This was also the reason given to plaintiff by Murray Berkowitz as relayed to him by the Board. (*Id*. ¶ 32.) However, plaintiff alleges that he "in fact agreed to re-negotiate the contract price upward" in early July 2010 and

Murray Berkowitz subsequently informed the Board that plaintiff was willing to pay more for the apartment. (*Id*. ¶ 35.) However, the Board allegedly "declined to consider an increased price for the unit, regardless of how high that new price might be." (*Id*.) According to the amended complaint, on August 10, 2010, after plaintiff sent a letter to the Board via its managing agent alleging discrimination against plaintiff, Murray Berkowitz phoned plaintiff and admitted to "knowing that the sale was denied 'for discriminatory reasons.'" (*Id*. ¶¶ 31, 36.) A "current unit owner and resident" of the Co-op also allegedly told plaintiff that there was "discriminatory conduct against men who were single" by the Board "which was commonly known among building residents."[5] (*Id*. ¶ 23.) To the extent defendants argue that these allegations are deficient because the amended complaint does not allege the existence of any single female applicants who were treated more favorably, the Court notes that, although such an allegation or piece of evidence would provide support for the discrimination claim, it is not a prerequisite to such a claim. For example, if plaintiff is able to prove direct evidence of discrimination based upon the combination of plaintiff's gender and

---

[5]   The Woodmere defendants argue that this Court should give less weight to any alleged statements by an "unnamed" owner and resident of the Co-op. As the defendants themselves concede, there is no requirement that this Court cannot consider an allegation because plaintiff has not named the individual making the statement. (Defs.' Reply at 9.) Nor is plaintiff's assertion of discrimination "based entirely" on testimony of the unnamed resident. (Defs.' Mot. at 9.) The Court concludes that in conjunction with the other facts alleged in the amended complaint, as discussed *supra*, plaintiff has sufficiently pled a plausible FHA claim against the Woodmere defendants.

marital status, the failure to allege or prove the existence of a similarly situated single female who received favorable treatment would not be required.  *See Lindsay*, 498 F.3d at 440 n. 7 ("[I]f, after discovery, [plaintiffs] are able to present direct evidence of discrimination, there will be no need to evaluate their claims under the *McDonnell Douglas/Burdine* burden-shifting approach.").  Thus, the failure to allege such evidence does not warrant dismissal at the motion to dismiss stage.

In sum, viewing the facts alleged in the amended complaint in the light most favorable to plaintiff, the Court concludes that Lax has sufficiently pled a plausible housing discrimination claim against the defendants.[6]

---

[6]  The Woodmere defendants assert that plaintiff has failed to sufficiently plead the involvement of each of the defendants in participating and carrying out the allegedly discriminatory scheme.  (Defs.' Mot. at 11.)  This failure, they assert, violates *Iqbal* and Federal Rule of Civil Procedure 8(a).  (*Id.* at 11-12.)  This Court disagrees.  As discussed in detail *infra*, plaintiff has satisfied the pleading standard with respect to each of the Woodmere defendants.  For example, plaintiff has alleged that the Co-op, by the action of each of its Board members, and with the participation of Wolf and Mirsky, rejected his application.  (Am. Compl. ¶ 21 (alleging that the Co-op, "by action of its Board of Directors" all of whom were then named, and "through its Managing Agent [Wolf] . . . rejected Mr. Lax's application"); *see also id.* ¶ 8 (alleging Mirsky was "actively involved in advising and discussing applications for unit purchases (including Mr. Lax's)"); ¶¶ 27, 32-33, 37 (alleging that Wolf, the Co-op and Board refused to allow the sale of the apartment to plaintiff).)  As a result, the Court concludes that plaintiff's allegations against all of the Woodmere defendants are sufficiently pled.

3.  Alleged Involvement of Mirsky and Wolf

In the amended complaint, plaintiff alleges that he was rejected by the Co-op through the Board, and that Mirsky and Wolf participated in the decision-making process.  (Am. Compl. ¶ 21.)  The Woodmere defendants argue, however, that Mirsky and Wolf cannot be held accountable for the actions of the Co-Op and Board.  First, they argue that Mirsky and Wolf were disclosed agents of the Co-Op and that, as a result, they cannot be held liable.  (Defs.' Mot. at 13.)  The Woodmere defendants also argue, in the alternative, that plaintiff has failed to sufficiently plead Mirsky and Wolf's involvement in the rejection of plaintiff's application.  (*Id.*)  The Court concludes that Mirsky and Wolf can be held liable as agents, and that plaintiff has alleged sufficient facts regarding their involvement in the rejection of plaintiff's application to survive a motion to dismiss.

Mirsky and Wolf can be sued as disclosed agents of the Co-Op and Board.  Disclosed agents "cannot be held personally liable for the acts of [their principal], unless [they have] participated or personally profited in the wrong."  *Bd. of Mngrs. of the Fairways at N. Hills Condominium v. Fairways at N. Hills*, 545 N.Y.S.2d 343, 347 (N.Y. App. Div. 1989) (collecting cases).  *See also Kandell v. Saunders*, 637 N.Y.S.2d 114, 115 (N.Y. App. Div. 1996) (stating that there is a "rule that a disclosed corporate agent . . . cannot be held personally liable for the acts of his corporations, unless he has participated or personally profited in the wrong"); *Hirschmann v. Hassapoyannes*, 811 N.Y.S.2d 870, 880-81 (N.Y. Sup. Ct. 2005) ("Because Schechter attended the meeting during which the board decided to withdraw its approval, discovery is necessary to reveal whether Schechter had any authority to influence the board in any

manner, or if he was nothing more than a conduit or avenue of communication between the board and Hassapoyannes." (citing *Sassower v. Field*, 752 F. Supp. 1182, 1187 (S.D.N.Y. 1990)).[7]

At this stage of the litigation, plaintiff has sufficiently pled participation by Wolf and Mirsky in the Board's consideration and rejection of his application to survive a motion to dismiss. Although Mirsky acted

---

[7] These cases are consistent with and distinguishable from *Pelton v. 77 Park Avenue Condominium* and *Mencher v. Weiss*, which are relied upon by the Woodmere defendants. In *Pelton*, the court concluded that "an agent for a disclosed principal [] is not liable to [plaintiff], a third party, for nonfeasance. It has long been an established rule of law that the agent is not liable to third persons for non-feasance but only for affirmative acts of negligence or other wrong." 825 N.Y.S.2d 28, 35 (N.Y. App. Div. 2006) (quotation marks omitted). Thus *Pelton* is distinguishable in that the plaintiff was alleging failure to act, whereas in this case plaintiff is alleging that Wolf and Mirsky participated in the Board decision-making process that led to the rejection of Lax's application. *See infra*. Furthermore, *Pelton* itself acknowledges the possibility of an agent's liability where the agent committed wrongdoing. With respect to *Mencher*, the dispute surrounded an agreement that was signed by an agent on behalf of a corporation. 306 N.Y. 1, 4 (N.Y. 1953). Plaintiffs argued that the agent signed the contract both in his individual and official capacities. *Id*. The Court of Appeals disagreed, concluding that "where there is a disclosed principal-agent relationship and the contract relates to a matter of the agency, the agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Id*. This factual scenario is entirely different from the one before this Court, where plaintiff is alleging personal involvement of Wolf and Mirsky in the review process of applications before the Board.

as a conduit of information between the Board, Co-Op and plaintiff, he was also alleged to be "actively involved in advising and discussing applications for unit purchases (including Mr. Lax's)" with the Board. (Am. Compl. ¶¶ 8, 21.) There are also numerous allegations that Wolf was a participant in the application process. (*Id*. ¶¶ 27, 32-33, 37 (alleging that Wolf, the Co-Op and Board refused to allow the sale of the apartment to plaintiff).) Viewing the facts alleged in the complaint in the light most favorable to plaintiff and drawing all reasonable inferences in plaintiff's favor, this Court concludes that plaintiff has sufficiently alleged that Mirsky and Wolf were involved in the decision-making process regarding the sale of apartments and, more specifically, with plaintiff's application to survive a motion to dismiss. *See, e.g., Carpenter v. Churchville Greene Homeowner's Ass'n, Inc.*, No. 09-CV-6552, 2011 U.S. Dist. LEXIS 17042, at *13-14 (W.D.N.Y. Feb. 22, 2011) ("[Defendants] argue that, as an agent of the HOA, Realty was merely assisting the HOA with its business and Plaintiffs have not pointed to any facts to suggest Realty was individually discriminating against the Plaintiffs. However, this is precisely the information that Plaintiffs seek to discover, information that would tend to show that the independent acts of the Individual Defendants and Realty (including any vote cast or any suggestion by Realty to vote in a particular way for discriminatory or retaliatory reasons) give rise to an inference of discrimination in violation of the Fair Housing Act.").

In sum, accepting the allegations in the complaint as true and drawing all reasonable inferences in plaintiff's favor, the Court concludes that Lax has sufficiently pled a plausible FHA discrimination claim—namely, that he sought and was qualified to purchase the apartment, but that his application was rejected by the Co-op

through the Board, and with the involvement of Wolf and Mirsky in the decision-making process, based upon his status as a single male—that survives a motion to dismiss.

### III. MOTION FOR SANCTIONS

Plaintiff has moved for sanctions against counsel for the Woodmere defendants under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). Specifically, plaintiff asserts that counsel should be sanctioned for: (1) attaching exhibits to the Woodmere defendants' motion papers that were "unrelated to the pleadings"; (2) referring in those motion papers to the original complaint filed by plaintiff; (3) "arguing facts" on a motion to dismiss; (4) making arguments with "no basis in law" or that were not based on "any allegation in the amended complaint"; and (5) violating E.D.N.Y. local rules as well as this Court's individual rules. (Pl.'s Mot. at ii.) For the reasons that follow, plaintiff's motion for sanctions is denied.[8]

Under Rule 11, to avoid the risk of sanctions, counsel must undertake reasonable inquiry to "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (internal quotation marks omitted) (quoting *Cooter &*

*Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). In considering a motion for sanctions under Rule 11, this Court applies an objective standard of reasonableness. *See MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1257-58 (2d Cir. 1996). Moreover, Rule 11 "is violated only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks omitted). Additionally, "when divining the point at which an argument turns from merely losing to losing *and* sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (emphasis in original).

The Court has no reason to believe that any of the factual allegations or legal arguments have been made in bad faith by counsel. Plaintiff asserts that counsel inappropriately referred to the Servicing Agreement in the motion papers.[9] However, it is clear that counsel did not act in bad faith. Specifically, counsel noted that in the amended complaint plaintiff referred to the application package to the Board, which contained the Servicing Agreement, and cited caselaw in support of the argument that the Servicing Agreement may be

---

[8] The Court notes that in an Order dated February 9, 2011 this Court granted the Woodmere defendants an extension of time to file an opposition to plaintiff's motion. Specifically, the Court ordered the Woodmere defendants to file their opposition thirty days after it decides their motion to dismiss. (*See* Docket No. 42.) However, upon review of plaintiff's motion, this Court concludes that an opposition from the Woodmere defendants is not necessary because plaintiff's motion is without merit.

[9] Plaintiff also objects to the inclusion of the Proprietary Lease and various exhibits regarding plaintiff's status as an attorney currently practicing law. (Pl.'s Mot. at 5, 16.) With respect to the Proprietary Lease, it is unclear why counsel attached it. In any event, there is no evidence that any of these documents were appended in bad faith. Further, counsel attached exhibits regarding plaintiff's status as an attorney to demonstrate that his amended complaint should not be read as liberally as one on behalf of a non-attorney.

considered.[10]  (Defs.' Mot. to Dismiss at 12.)  With respect to counsel's references to the original complaint (Defs.' Reply at 10), counsel was not attempting to contest a "legally superseded document" as plaintiff suggests. (Pl.'s Mot. at 8.)  Instead, counsel argued that plaintiff's sex plus discrimination claim was pulled out of thin air after it became apparent that his claim based on marital status would not succeed. (Defs.' Reply to Dismiss at 10.)  Thus, plaintiff has failed to demonstrate that counsel acted in bad faith.  Further, to the extent plaintiff alleges that counsel made various factually and legally inappropriate arguments in the motion papers (Pl.'s Mot. at 9-14, 16-17), plaintiff once again fails to demonstrate that counsel acted in bad faith or beyond the objective standard of reasonableness where he cited caselaw and other documents in support of his claims. Finally, the fact that this Court denied the Woodmere defendants' motion to dismiss does not warrant the imposition of sanctions in this case.[11]  *See, e.g., Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990) ("The positions advanced by [plaintiff] and his attorney, however faulty, were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against."); *see also Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1491 (11th Cir. 1987) (finding Rule 11 sanctions unwarranted, even when "[t]he evidence [plaintiff] presented not only failed to indicate discriminatory treatment, but instead revealed that [plaintiff] received several salary increases and promotions during his tenure. [Plaintiff] made no showing that other similarly situated members of the unprotected class were treated preferentially nor did he present evidence of retaliation. Under these circumstances, it is apparent that [plaintiff's] claim may be characterized as without foundation, but there is no evidence that he was in bad faith in bringing the claim, or that it was brought for any purpose other than to receive what he thought he was entitled to under the law."); *Scientific Components Corp. v. Sirenza Microdevices, Inc.*, No. 03–CV–1851 NGG, 2007 WL 1026411, at *5 (E.D.N.Y. Mar. 30, 2007) ("The court agrees that [the defendant] has been imprudent in choosing to litigate this claim. However, Rule 11 sanctions are not appropriate where there is a viable claim that is weak."); *Eisenberg v. Yes Clothing Co.*, No. 90 CIV. 8280(JFK), 1992 WL 36129, at *4 (S.D.N.Y. Feb. 19, 1992) ("Rule 11 sanctions are not to be imposed on every litigant that files a motion that the

---

[10]  The Court notes that it did not rely on either the Servicing Agreement or the Proprietary Lease in its analysis of the Woodmere Defendants' motion to dismiss.  Even if it had, these documents would not have altered the Court's analysis.

[11]  Plaintiff argues that failure to comply with this Court's individual rules regarding the inclusion of a table of contents and authorities is sanctionable.  While it is clear that all parties must comply with this Court's individual rules, the Court concludes that counsel's conduct in this case was not in bad faith and, as plaintiff himself admits, counsel corrected these issues in his reply brief.  (Pl.'s Mot. at 15.)  Similarly, though it appears that counsel failed to comply with Local Civil Rule 7.1(c), which requires that *pro se* litigants be provided with unpublished decisions, plaintiff admits that counsel sent a letter to plaintiff stating that he could send the unpublished cases cited in defendants' motion

---

papers "if it would be of assistance . . . at this juncture," and sent plaintiff such cases cited in defendants' reply papers.  (*Id.*)  There is once again no evidence that counsel failed to provide the cases in bad faith, perhaps believing that plaintiff, who at the time the briefs were filed was appearing *pro se*, was an attorney and would have access to LEXIS or WESTLAW.

13

Court deems premature, or ill-advised, or weak."). *See generally Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (warning against the use of "hindsight logic" that "because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation").

In sum, there is no basis to conclude that any grounds for sanctions are present. Accordingly, plaintiff's motion for sanctions under Rule 11 is denied.

## IV. CONCLUSION

For the foregoing reasons, the Woodmere defendants' motion to dismiss is denied. Furthermore, the Court denies plaintiff's motion for sanctions against counsel for the Woodmere defendants. The remaining parties shall proceed to discovery at the direction of Magistrate Judge Wall.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 23, 2011
        Central Islip, NY

* * *

Plaintiff is represented by Michael Todd Parker, Moskowitz & Book LLP, 345 Seventh Avenue, 21st Floor, New York, NY 10001. The attorney for the Woodmere defendants is David A. Boyar, D'Amato & Lynch, 2 World Financial Center, New York, NY 10281. The attorney for the Berkowitz defendants is Andrew E. Curto, Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP, 330 Old Country Road, Suite 301, Mineola, NY 11501.

14